**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**EDDIE WEBSTER,**
          **Petitioner,**

**v.**                                                 **Case No. 4:06cv43/RH/MD**

**JAMES R. MCDONOUGH,**
          **Respondent.**

_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 6) to which petitioner has replied (doc. 7).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by information with armed robbery with a firearm (doc. 6, ex. B, p. 7).[1]  Prior to trial petitioner's counsel filed a motion to suppress his confession, arguing that the custodial interrogation should have been stopped when

---

[1]Hereafter all references to exhibits will be to doc. 6 unless otherwise noted.

petitioner asked to see a psychiatrist.  The motion was denied after a hearing (ex. B).  A jury found petitioner guilty as charged, and he was sentenced to 30 years imprisonment (ex. A, pp. 16, 36-43).  Petitioner's direct appeal was unsuccessful. *Webster v. State*, 861 So.2d  1159 (Fla. 1st DCA 2003) (Table).  Petitioner then filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 (ex. J).  The trial court denied the motion in a written order (ex. K).  Petitioner's motion for reconsideration was denied, and the order of denial was affirmed on appeal. *Webster v. State*, 916 So.2d 795 (Fla. 1st DCA 2005) (Table).  Petitioner now seeks federal habeas relief.  Respondent concedes that the petition is timely, and further concedes that all issues, save one, were properly exhausted by being presented to the state courts.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).   The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court

case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner raises four grounds for relief, two involving error by the court, and two involving alleged ineffective assistance of counsel.  They will be discussed in the order presented.

1.   Trial court error - denial of motion to suppress.

As noted above, petitioner filed a motion to suppress his confession.  An evidentiary hearing was held before trial.  The thrust of petitioner's argument, then and now, is that while he was in police custody he asked to see a psychiatrist.  His request was denied, and the interrogation continued.  Petitioner does not claim that he asked for a lawyer, or asked that the interrogation cease.  Rather, he contends that his request for a psychiatrist signaled a mental defect which reasonably would

have alerted the police that he was not competent to decide whether to waive his right to remain silent.

At the suppression hearing Detective Ronnie Austin of the Leon County Sheriff's Office testified, without contradiction, that he interviewed the petitioner when he was arrested on some outstanding warrants in robbery cases.  He advised the petitioner of his rights from a printed *Miranda* warning form.  Petitioner did not sign the form; he did not refuse to sign it, he just did not respond when Det. Austin asked him if he wanted to.  Nevertheless, he twice responded positively when Det. Austin asked him if he understood his rights.   He said he wanted to see a psychiatrist, but he did not ask that the questioning be stopped and he did not request an attorney, nor even mention one.  The interview was routine and petitioner seemed to be clear-headed and lucid.  Petitioner did not appear to be under the influence of drugs or alcohol.  He was asked if he had committed any robberies.  He answered that the first one was a discount liquor store across from the Leon County School Board on Pensacola St., and that the victim was an Indian man.  The second robbery was at a Swifty Mart on Capital Circle Southeast.  At some point he said he heard and talked to a purple rat, but gave no indication that the rat was present during the interview.   There was no recording of the interview, nor any other witnesses.   As to petitioner's request to see a psychiatrist, Det. Austin felt that petitioner knew what was going on and was bluffing.  Det. Austin also testified that petitioner's confession was not coerced and that there were no threats or promises.

The court took the motion under advisement because it wanted to have the petitioner examined by a mental health professional concerning competency to stand trial.  (Ex. B, pp. 17-39).  After jury selection and before the trial started, the matter of petitioner's competence was discussed.  Defense counsel stated that he had talked to a Dr. Leland, a psychiatrist, who could not offer an opinion concerning petitioner's mental state at the time of arrest, but felt that at the time he was examined petitioner was fully oriented in all spheres, understood what was

happening, and was competent to stand trial.  When questioned by the court, petitioner nodded affirmatively that he was "mentally all here," and the court found on the record that petitioner was competent to stand trial.  Based on the report from Dr. Leland, the court also denied the motion to suppress (ex. C, trial trans., pp. 5-6, 8).  Petitioner appealed the denial of his suppression motion (ex. F).  The appellate court affirmed (ex. H).

Petitioner states his position thus: "The crux of petitioner's position [is] that his statements were not freely and voluntarily given and thus were obtained in violation of the Fourteenth Amendment of the U. S. Constitution . . . ."  (Doc. 1, p. 6).  He reiterates this position in his reply, by explaining that he really posits two theories: (1) his request for a psychiatrist should have been interpreted as a request for legal counsel, and (2) the fact that he requested a psychiatrist showed that he was mentally unstable and that his confession was not voluntarily and freely given.

Federal law on the in-custody interrogation of suspects is well established.  In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d  694 (1966) the Court established the now familiar warnings that must be given to a suspect in custody.  The *Miranda* rule has since been litigated extensively.  Relative to the facts in this case, in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), a habeas petitioner was given his *Miranda* rights by law enforcement and agreed to talk, but after a time said that he wanted an attorney.  The interview was stopped.  The next day, other law enforcement agents arrived to talk to him.  A jailer told him he had to talk to the officers.  He was again informed of his *Miranda* rights.  He said he was willing to talk, and ultimately implicated himself in the crime.  The Supreme Court reversed his conviction, holding that once a suspect asks for an attorney, there must be no more contact until he has spoken to counsel.  The critical factor was not that the petitioner had waived his rights at the beginning of the second interview, but that the police initiated the second interview.  That overreaching by law enforcement was a constitutional violation.

The manner in which a lawyer must be requested was addressed in *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).  There a suspect under custodial interrogation stated "Maybe I should talk to a lawyer."  512 U.S. at 455, 114 S.Ct. at 2353.  He was told that if he wanted a lawyer, the interview would stop, and after some discussion the suspect said he did not want a lawyer.  He was then reminded of his rights and the interview continued for another hour.  He then said he wanted a lawyer, and questioning ceased.  The Court refused to extend *Edwards* and require that officers cease questioning at any point that a lawyer is mentioned.  "Rather, the suspect must unambiguously request counsel."  512 U.S. at 459, 114 S.Ct. at 2355.  That is, "he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."  *Id.*

The state trial court did not explain the constitutional basis for denying the motion to suppress, and the appellate court did not explain the basis for affirming the ruling.  However, it is not disputed that the constitutional issue here presented was presented to and decided by the state court, though without discussion (doc. 1, p. 4; doc. 6, p. 8).  "[T]he summary nature of a state court's decision does not lessen the deference that it is due" under § 2254(d).  *Wright v. Secretary for Dep't of Corrections*, 278 F.3d 1245, 1254 (11th Cir. 2002).  For the reasons that follow, the undersigned concludes that the state court's denial of relief on this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

Although the trial judge made no explicit findings on this aspect of petitioner's claim, implicit in his denial of relief is that petitioner made no request for a lawyer or that the interview be stopped, ambiguous or otherwise.  Based on the suppression hearing evidence, this finding was not objectively unreasonable.

Further, a statement that a suspect wants to see a psychiatrist would not put a reasonable officer on notice that the suspect wants a lawyer.  Det. Austin's impression was that petitioner was bluffing and that he did not take the statement seriously, and no evidence was offered to contradict that impression.  There was no "clearly established Federal law" requiring the detective to stop the interview when petitioner asked to see a psychiatrist, and it was not objectively unreasonable for the state court to decline to extend *Edwards* to this context.  Thus, petitioner's first theory does not warrant federal habeas relief.

Petitioner's second theory - that his request for a psychiatrist put the detective on notice that he was mentally deficient and was therefore incapable of knowingly waiving his rights - is likewise foreclosed by Supreme Court precedent.  Petitioner cites *Dunkins v. Thigpen*, 854 F.2d 394 (11th Cir. 1988) for the proposition that mental illness is a factor to be considered in ruling on the validity of a waiver of constitutional rights.  There, a suspect confessed after waiver, but later claimed mental retardation.  The court noted that the question of whether a waiver was knowing and intelligent has two distinct dimensions: (1) it must be free of intimidation, coercion or deception, and (2) it must be made with full awareness of the nature of the right waived, and the consequences of the waiver.  *Dunkins*, 854 F.2d at 398 (quoting from *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 1141, 89 L.Ed.2d  410 (1986)).  Contrary to petitioner's contention here, *Moran* did not involve a claim of mental problems, but a question of whether the police overreached when they failed to inform the suspect that his sister was hiring a lawyer for him.  The *Moran* Court held that there was no overreaching.

And in *Dunkins* the ultimate finding was the same.  The *Dunkins* court noted, first that "mental retardation does not by itself prevent a defendant from voluntarily waiving his constitutional rights."  854 F.2d at 399.  Rather, "[t]he voluntariness of a *Miranda* waiver depends on the absence of police overreaching, and not on any sense of free choice," *id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515,

93 L.Ed.2d 473 (1986)).  Indeed, it is *Connelly* that controls here, because in that case, decided after *Moran, supra*, the court directly considered a suspect's mental status as it relates to a confession.  The defendant in *Connelly* approached a police officer and confessed to an unsolved murder.  The next day, by which time counsel had been appointed, his behavior became disoriented.  Ultimately, a psychiatrist opined that the defendant was schizophrenic, and his mental illness interfered with his ability to make free and rational choices.  His earlier confession was suppressed, and the Colorado Supreme Court affirmed, holding that the absence of police coercion did not foreclose a finding of involuntariness.  Reversing, the Supreme Court of the United States held that its exclusionary rule jurisprudence did not dictate such a result.  The Court explained that the cases it had considered in the fifty years since the seminal case of *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed.2d 682 (1936) had all "focused upon the crucial element of police overreaching."  *Connelly*, 479 U.S. at 163, 107 S.Ct. at 520.  "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."  *Id.*, 479 U.S. at 164.  The Court recognized that mental retardation had played a part in two of its earlier decisions, *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), and *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), but distinguished those cases, because in each case the police had exploited a *known* mental or drug-induced defect with coercive tactics.  The "essential link" between a confession and a constitutional violation is police coercion, not mental illness. *Connelly*, 479 U.S. at 165, 107 S.Ct. at 521.

That essential element is missing in the instant case.  The unrebutted evidence at the suppression hearing was that the interview was routine and relatively short.  Det. Austin testified that there were no threats or promises, but that he simply asked petitioner to describe the robberies.  Petitioner described them in detail, and his description was borne out by subsequent investigation.  Thus,

petitioner cannot show that a mental defect, if he had one, was exploited in any manner.  His second theory therefore must fail.

There is another reason to deny this part of petitioner's claim.  There was in fact no evidence produced, then or now, that petitioner was mentally deficient.  The trial judge reserved ruling on the motion to suppress until after he heard from the examining psychiatrist.  The psychiatrist did not detect any mental problems as far as petitioner's ability to stand trial.  This buttressed Det. Austin's impression that petitioner was lucid and understood what was happening.  Petitioner not only described the robberies he had committed, but accurately described where they occurred and accurately described one of the victims as Indian.  Thus, even if petitioner's mental condition played a part in the voluntariness of his confession, which it did not, he cannot prove that there was any reliable evidence that he had a mental problem during the interview.  For all of the foregoing reasons, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

2.  *Batson* violation.

Petitioner next contends that his constitutional right to equal protection, guaranteed in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was violated when the prosecutor used a peremptory strike against Ms. Avent, a black venire member.

Respondent contends that this issue is procedurally defaulted.  He argues that petitioner waived any challenge to the State's peremptory strike of Ms. Avent by affirmatively accepting the jury after his earlier-made objection, and by voicing no objection to the panel before it was sworn.  Therefore, petitioner was procedurally barred from raising the issue on direct appeal.

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115

---

[2]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

        (A)  the applicant has exhausted the remedies available in the courts of the State; or

        (B) (i)   there is an absence of available State corrective process; or

            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion."  *Judd*, 250 F.3d at 1318, or in a manifestly unfair manner, *Ford v. Georgia*, 498 U.S. at 424-425, 111 S.Ct. at 858; *Upshaw v. Singletary*, 70 F.3d at 579.

　　　To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have

prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Petitioner raised this issue in his direct appeal (ex. F, pp. 17-21).  The State argued that the issue had not been preserved for appellate review because defense counsel accepted the jury without preserving or restating any objection.  The appellate court affirmed without written opinion.  In *Joiner v. State*, 618 So.2d 174 (Fla. 1993), the Florida Supreme Court held, under facts indistinguishable from these, that when counsel accepts a jury immediately prior to its being sworn without reserving his earlier-made objection, he is presumed to have abandoned the objection.  That procedural rule was firmly established and regularly followed at the time this case was tried.  This court cannot presume that the state court ignored this procedural rule when it issued a summary affirmance of petitioner's conviction. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented.  *Coleman*, 501 U.S. at 735-36, 111 S.Ct. 2546; *Kight v. Singletary*, 50 F.3d 1539, 1544-45 (11th Cir. 1995) (applying procedural bar where state court's

summary dismissal did not explain basis for ruling); *Tower*, 7 F.3d at 209 (applying bar where state court did not rule on claims presented); *Grossman v. Crosby*, 359 F.Supp.2d 1233, 1250 (M.D. Fla. 2005), *aff'd sub nom. Grossman v. McDonough*, 466 F.3d 1325 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 2430 (2007).  Petitioner has made none of the requisite showing to excuse his default.  Therefore the issue cannot be considered by this court.

Even if this court were to consider the claim, it would fail.  It is a well-established principle that a defendant is denied equal protection of the law when he is tried before a jury from which members of his or her race have been excluded by the state's purposeful conduct.  *Powers v. Ohio*, 499 U.S. 400, 404, 111 S.Ct. 1364, 1367, 113 L.Ed.2d 411 (1991).  Neither the state nor the defendant may engage in race-based exclusions of potential jurors through peremptory challenges, regardless of whether the defendant and the excluded juror(s) share the same races.  *Powers*, 499 U.S. at 402, 111 S.Ct. at 1366; *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  And, a criminal defendant has standing to challenge such race-based peremptory challenges on behalf of the excluded jurors because of his own injury.  *Powers*, 499 U.S. at 415, 111 S.Ct. at 1373.  A *Batson* challenge  is made in three steps.  "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.  Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question."  *Rice v. Collins*, --- U.S. ---, 126 S.Ct. 969, 973, 163 L.Ed.2d  824 (2006).  "[S]o long as the  reason is not inherently discriminatory, it suffices."  *Id*.  Third, the trial court must "assess the plausibility of that reason in light of all the evidence with a bearing on it."  *Miller-El v. Dretke*, 545 U.S. 231, ---, 125 S.Ct. 2317, 2331, 162 L.Ed.2d  196 (2005).

**During jury selection the following discussion took place:**

**MR. CHIN (defense counsel): With regard to eyewitness testimony, you could be the trier of fact and decide whether or not you're convinced beyond a reasonable doubt as to somebody's ability to make an identification?**

**JUROR AVENT:  Yes.**

**MR. CHIN:  Now, with regard to beyond and to the exclusion of every reasonable doubt, do you think that's a high burden?**

**JUROR AVENT:     No, I don't.**

**MR. CHIN:  Do you think it's a fair burden?**

**JUROR AVENT:  I think it's a fair burden.**

**MR. CHIN:  And why do you think that?**

**JUROR AVENT:  I think that you shouldn't convict a person unless you're certain the person has done the crime.**

**MR. CHIN:  And as a juror, you see no problem sitting in and applying that standard to this case?**

**JUROR AVENT:  No, I do not.**

**THE COURT:  Let me make sure, though, you said certain.**

**JUROR AVENT:  I did use the word certain, I believe.**

**THE COURT:  That's not the standard.  [The court then explained that "certain" was not the standard of proof, but "beyond a reasonable doubt." The court gave some examples, and then asked:] Are you okay with that?**

**JUROR AVENT:  I'm okay with that, sir.**

**(Ex. C, pp. 102-105).**

The prosecutor later used a peremptory strike against Ms. Avent, stating that she was the person who talked about being "certain" before she would convict, and that the prosecutor thought that Ms. Avant "still felt certain she had to be certain."

(Ex. C, p. 112).  Ms. Avant, like petitioner, was African American.  Defense counsel protested, stating that he did not think the prosecutor's stated reason was race neutral.  The court replied simply that the reason proffered by the prosecution did not have to be plausible, only race neutral, and moved on to the next member of the venire without further discussion (ex. C, p. 112-113).  Shortly thereafter both sides accepted the jury (*id.*).  Nothing more was said about the issue before the jury was sworn (ex. C, trial trans. pp. 5-13).

Arguably, the trial court did not follow the *Batson* steps fully, but that does not help the petitioner.   The reason it does not help is that he is asking this court to review the state court's ruling in a vacuum, which it cannot do.  That is, this court knows only two things about race as it relates to this case:  the petitioner and Ms. Avant are African American.  The court does not know how many other blacks were on the venire, or how many ended up on the jury, or whether any of the other members of the venire struck by the prosecutor were black, or even whether defense counsel struck any blacks.  The record is simply silent.  This case is no different from *Hightower v. Perry*, 459 F.3d 1067 (11th Cir. 2006).  There, the Eleventh Circuit, on remand from the Supreme Court in light of *Miller-El, supra*,  reviewed its earlier decision in the case.  It found that, unlike in *Miller-El*, the petitioner had not presented either the state courts or the district court on habeas petition any of the facts lacking here.  The *Hightower* court held that the totality of the circumstances did not raise an inference of racial discrimination, and that petitioner's effort there to present evidence to the district court concerning the make-up of the panel and the jury was too little and too late.  Finally, the *Hightower* court held that the trial court had the best opportunity to view the prosecutor's demeanor, and found the stated reason to be race neutral.

The same is true here.  When the prosecutor said he was striking Ms. Avant because he thought she would insist on being "certain" of guilt, defense counsel did not challenge him other than to say that he did not think that the proffered reason

was race neutral.  The court found that it was.  "Under *Batson*, almost any plausible reason can satisfy the striking party's burden, as long as the reason is race or gender neutral."  *United States v. Walker*, --- F.3d ---, 2007 WL 1951378, at *5 (11th Cir. July 6, 2007).  At that point, defense counsel could have forced the third *Batson* step, and pointed to evidence that made the stated reason implausible, but he did not. Regardless, petitioner here has totally failed to show this court that any facts were present that would have challenged the plausibility of the prosecutor's stated reason, or that such an argument could even have been made.  This court is simply left to speculate on whether, as petitioner argues, his claim had merit and would have succeeded if counsel had preserved his objection.  This court will not "'blindly accept speculative and inconcrete claims . . . .'"  *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)).  Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[3]  Thus, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."  *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).

   3.   <u>Ineffective assistance of counsel - failure to preserve *Batson* claim.</u>

   Next petitioner contends that his attorney's assistance was deficient for failing to preserve for appellate review the *Batson* objection discussed above.  This claim was presented to the trial court in petitioner's motion for post-conviction relief.

    The Supreme Court standard for ineffective assistance of counsel was set forth above.  The trial court denied relief, holding that petitioner could not show prejudice, because he could not establish a reasonable probability that a properly

---

[3]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

preserved objection would have resulted in a reversal of the case (ex. K).  This conclusion was not an unreasonable application of *Strickland*, for the reasons set forth in Ground 2 above.

As to the deficient performance prong, petitioner has failed to show this court how counsel's performance fell below an objective standard of reasonableness.  As discussed above, there are no facts present that prove anything other than the state challenged a black juror and counsel did not preserve his objection.  That may have been a mistake, or it may have been a conscious decision on counsel's part.  The next juror up may have been black, or there may have been several blacks already on the jury.  This court simply does not know.  It is petitioner's burden to prove deficient performance, and he has neither presented any relevant facts in support of his claim, nor pointed the court to precedent holding that not objecting to a strike under these facts constitutes deficient performance.  Indeed, in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).  Petitioner has not carried that high burden.  Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.

4.   Ineffective assistance of counsel - failure to object to "indictment."

As his final ground for relief petitioner contends that the information filed against him was defective, and his attorney should have moved to dismiss it.  This claim was presented to the state court in petitioner's motion for post-conviction relief.  The trial court denied relief, holding that the file contained a probable cause affidavit that was sufficient to support the charging document.

Petitioner's argument here is not clear.  He seems to contend that more is required to support an information than an investigating officer's affidavit. Petitioner says there were no material witness affidavits and no evidentiary hearing to support the information.  However, the information filed against petitioner complied with Fla. R. Crim. P. 3.140(g), which requires generally that an assistant state attorney sign the information under oath, and attest that he or she received testimony under oath from the material witness or witnesses for the offense (ex. A, pp. 4-5).  The trial court held that the investigating officer's affidavit was sufficient to support this requirement.

Petitioner's argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law.  In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.  In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial. *Id.* at 1354-55. The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient.  *Id.*  The Eleventh Circuit held: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Similarly, in *Callahan*, the petitioner contended his counsel was ineffective for failing to argue that, based on the Alabama state courts' interpretation of the Double Jeopardy Clause in three state court cases (*Hull v. State*, 607 So.2d 369 (Ala. Crim.

App. 1992), *Ex parte Hergott*, 588 So.2d 911 (Ala. 1991), and *Ex parte Callahan*, 471 So.2d 463 (Ala. 1985) (*Callahan I*)), the introduction of petitioner's statements at his second trial was precluded.  The Alabama Court of Criminal Appeals concluded that the petitioner's claim relied on an erroneous interpretation of state law and rejected it.  The Eleventh Circuit held:

> [T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on *Callahan I*, *Hull*, and *Hergott* – the objection would have been overruled. *Callahan* [*v. State*], 767 So.2d [380,] 386-87 [(Ala. Crim. App. 1999)] (*Callahan III*). Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.
>
> Moreover, we are convinced [petitioner] could not satisfy the prejudice prong of *Strickland*. [Petitioner's] ability to demonstrate prejudice is again foreclosed by the state court's decision in *Callahan III*.  Even if [petitioner's counsel] was ineffective for failing to make the objection, the state court has told us that if he did make the objection it would not have been successful. [Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection.

427 F.3d at 932.

Here, as in *Herring* and *Callahan*, the state courts have answered the question of what would have happened had petitioner's counsel challenged the information. It would not have been successful.  Therefore, counsel cannot be faulted for failing to challenge it.  And since counsel would have failed had he acted as petitioner demands, petitioner cannot show prejudice.

     **Accordingly, it is respectfully RECOMMENDED that the petition for writ of habeas corpus, (doc. 1) challenging the conviction and sentence in the case of *State of Florida v. Eddie Webster*, in the Circuit Court of Leon County, Florida, case no.99-4900, be DENIED, and that the clerk be directed to close the file.**

     **At Pensacola, Florida this 27th day of July, 2007.**

/s/ *Miles Davis*
       **MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**